BUEHNE STEEL WOOL CO. v. UNITED STATES.

UNITED STATES v. BUEHNE STEEL WOOL CO.

(Circuit Court of Appeals, Second Circuit. December 4, 1907.)

Nos. 86, 87 (4,389, 4,415).

1. CUSTOMS DUTIES—CLASSIFICATION—"STEEL WOOL"—"ARTICLES MANUFACTURED FROM WIRE."

In Tariff Act July 24, 1897. c. 11, § 1, Schedule C, par. 137, 30 Stat. 161 [U. S. Comp. St. 1901, p. 1699], the provision for "articles manufactured from * * * wire," cannot be restricted to manufactured articles which contain the round wire in its integrity; and "steel wool," consisting of filaments shaved from steel wire, and constituting a finished commercial article, is embraced in said provision.

2. SAME—DOUBT—IMPOSITION OF HIGHEST RATE.

Where merchandise is dutiable at rates varying according to certain prescribed conditions, and such conditions are not determinable by the customs officers on inspection of the goods, the collector may assess duty

at the highest rate which the circumstances will warrant, leaving it to the importer to inform the collector of the true conditions by satisfactory evidence.

Cross-Appeals from the Circuit Court of the United States for the Southern District of New York.

These causes come here upon appeals by the importer and the government, neither of whom appear to be satisfied with the classification of the articles imported which has been approved by the Board of General Appraisers and the Circuit Court.

For decision below, see 154 Fed. 93, affirming a decision of the Board of United States General Appraisers, G. A. 6,406 (T. D. 27,536).

Comstock & Washburn (Albert H. Washburn, of counsel), for importers.

J. Osgood Nichols, Asst. U. S. Atty., and W. Wickham Smith, for the United States.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

LACOMBE, Circuit Judge. The importations were under the tariff act of 1897. The relevant paragraphs are as follows:

"Par. 135. Steel ingots, cogged ingots, blooms, and slabs, by whatever process made; die blocks or blanks; billets and bars and tapered or beveled bars; mill shafting; pressed, sheared, or stamped shapes; saw plates, wholly or partially manufactured; hammer molds or swaged steel; gun-barrel molds not in bars; alloys used as substitutes for steel in the manufacture of tools; all descriptions and shapes of dry sand, loam, or iron-molded steel castings; sheets and plates and steel in all forms and shapes not specially provided for in this act, all of the above valued at one cent a pound or less, three-fourths of a cent a pound; valued above one cent and not above one and four-tenths cents per pound, four-tenths of one cent a pound * * *; valued above sixteen cents per pound, four and seven-tenths cents per pound." Act July 24, 1897, c. 11, § 1, Schedule C, 30 Stat. 161 [U. S. Comp. St. 1901, p. 1638].

"Par. 137. Round iron or steel wire not smaller than number thirteen wire gauge, one and one-fourth cents per pound; smaller than number thirteen and not smaller than number sixteen wire gauge, one and one-half cents per pound; smaller than number sixteen wire gauge, two cents per pound: Provided, that all the foregoing valued at more than four cents per pound shall pay forty per centum ad valorem. Iron or steel or other wire not specially provided for in this act, including such as is commonly known as hat wire, or bonnet wire, crinoline wire, corset wire, needle wire, piano wire, clock wire, and watch wire, whether flat or otherwise, and corset clasps, corset steels, and dress steels, and sheet steel in strips, twenty-five one-thousandths of an inch thick or thinner, any of the foregoing, whether uncovered or covered with cotton, silk, metal, or other material, valued at more than four cents per pound, forty-five per centum ad valorem: Provided, that articles manufactured from iron, steel, brass or copper wire, shall pay the rate of duty imposed upon the wire used in the manufacture of such articles, and in addition thereto one and one-fourth cents per pound, except that wire rope and wire strand shall pay the maximum rate of duty which would be imposed upon any wire used in the manufacture thereof, and in addition thereto one cent per pound; and on iron or steel wire coated with zinc, tin, or any other metal, two-tenths of one cent per pound in addition to the rate imposed on the wire from which it is made." 30 Stat. 161 [U. S. Comp. St. 1901, p. 1639].

"Par. 193. Articles or wares not specially provided for in this act, composed wholly or in part of iron, steel, lead, copper, nickel, pewter, zinc, gold, silver, platinum, aluminum or other metal, and whether partly or wholly manufactured forty-five per centum ad valorem." 30 Stat. 167 [U. S. Comp. St. 1901, p. 1645].

The collector classified the merchandise under paragraph 193. The Circuit Court held that its proper classification was under paragraph 135. It being contended by the importer that it was covered more specifically by paragraph 137, the Circuit Court followed a decision of Judge Townsend in Buehne v. U. S. (C. C.) 140 Fed. 772, and overruled the contention. The merchandise is known as "steel wool," which is manufactured from steel wire by a patented process whereby, by means of a toothed knife, the steel is shaved into filaments of varying degrees of fineness, which constituted in that form a finished commercial article used chiefly for polishing hardwood floors and furniture. There is evidence to the effect that sometimes—though apparently rarely—the article is made from steel wire rods or steel bars; but as to the importations now before us all parties concede that they are manufactured from steel wire.

The phrase "articles manufactured from steel wire" seems to be more specific than the phrase "steel in all forms and shapes not specially provided for in this act." We are clearly of the opinion that it cannot be restricted to manufactured articles which contain the round wire in its integrity; the use of the words "manufactured from wire" precludes so narrow a construction. The paragraph is apparently framed to protect the wire-drawing industry. It lays a duty not only on the wire while it remains wire, but on articles into whose manufacture wire has entered as the raw material. It is suggested that the plain language of paragraph 137 should not be held to cover this particular article manufactured from wire because, the identity of the wire being destroyed, it is impossible from mere inspection to determine accurately either its gauge or value. But this circumstance presents no really serious difficulty. In the case of each importation the collector would, of course, assess duty on the basis of the highest value of wire which the appearance of the article will warrant, and upon the assumption that the gauge was the one usually taken for the manufacture of such articles. If the value were less or the gauge larger, it would be for the importer to inform the collector of those facts by satisfactory proofs. In our opinion, therefore, this steel wool should be assessed for duty under paragraph 137.

The protest claims, inter alia, that the merchandise imported is covered by paragraph 137 as articles manufactured from round steel wire worth less than four cents a pound, but gives no information as to what was the gauge of the wire, and we do not find evidence in this record showing either the value or the gauge of the wire from which this particular lot of steel wool was manufactured. Nevertheless the protest was sufficiently specific to inform the collector as to what was the classification which the importer asked for; upon reliquidation the amount of duty could have been determined at such sum as would have secured to the government the full amount of duty.

The decision of the Circuit Court and of the Board of General Appraisers is reversed, and causes remanded for reliquidation of the entries in accordance with the views above expressed.