## UNITED STATES *v.* EIMER & AMEND (No. 4241) [1]

United States Court of Customs and Patent Appeals, April 1, 1940

*Webster J. Oliver*, Assistant Attorney General (*Richard F. Weeks*, special attorney, of counsel), for the United States.

*Barnes, Richardson & Colburn* (*Joseph Schwartz* and *Samuel M. Richardson* of counsel) for appellee.

[Oral argument February 8, 1940, by Mr. Weeks and Mr. Richardson]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

BLAND, Judge, delivered the opinion of the court:

The Government has here appealed from a judgment of the United States Customs Court, First Division, which sustained the protest of the importer which claimed the imported merchandise—glass wool—to be dutiable under the provision "manufactures of glass" in paragraph 230 (d), Tariff Act of 1930. The collector had classified the merchandise as dutiable under paragraph 218 (a) at 85 per centum ad valorem.

The pertinent portions of the paragraphs involved follow:

PAR. 218. (a) Biological, *chemical*, metallurgical, pharmaceutical, and surgical *articles* and utensils of all kinds, including all *scientific articles*, and utensils, whether used for experimental purposes in hospitals, laboratories, schools or universities, colleges, or otherwise, all the foregoing (except articles provided for in paragraph 217 or in subparagraph (e)), finished or unfinished, wholly or in chief value of glass, 85 per centum ad valorem; wholly or in chief value of fused quartz or fused silica, 50 per centum ad valorem. [Italics ours.]

PAR. 230. * * * (d) All glass, and manufactures of glass, or of which glass is the component of chief value, except broken glass or glass waste fit only for remanufacture, not specially provided for, 50 per centum ad valorem.

The record is silent as to the manner in which the glass wool is made. The merchandise involved in this suit was imported in two cases, one containing 105 pounds and the other containing 128 pounds. The sample of the merchandise before us has much the appearance of ordinary wool. The merchandise seems to respond to a description of the glass wool involved in the case of *Rudolf Aich* v. *United States*, synopsis No. 12716, Synopsis of Decisions, 1892, Vol. 1, page 509, as follows:

It resembles in appearance spun silk or fine lustrous wool, and is known either as "glass silk" or as "glass wool," being in fact spun glass, made by dipping glass rods into glass in a state of fusion and drawing it out into fine threads or filaments. * * * it is chiefly used in chemical laboratories for filtering purposes, and is well suited for filtering acid or alkaline solutions; * * *

The sole question presented in the instant case involves the meaning to be given the provisions "chemical * * * articles" and "scientific articles" in said paragraph 218 (a). It is not contended here by anyone that the imported glass wool is a "utensil," or that it should be classified for duty under any paragraph other than paragraph 218 (a), if any part of that paragraph may be held to cover it. The sole witness who testified to its use stated that he had never used it for any other than laboratory purposes, and that its "main use" is for filtering purposes for corrosive substances such as strong acids. It is not contended here that it is not exclusively used in science or that it is not so used in laboratories for filtering chemicals.

The sole contention of the importer, with which contention the trial court was in agreement, is, in substance, that the word "articles" used in said paragraph 218 (a) was not used in the broad sense in which the word is frequently used, but that it should be given a narrower or more restricted meaning which does not cover material or substances, regardless of their use, which do not have definite form and shape. The importer argues that it was not the intention of Congress in providing for scientific articles of glass, when the word "articles" is used in connection with the word "utensil," to include within the paragraph bulk substances such as that at bar. Substantially the same argument would apply to the expression "chemical * * * articles."

The word "articles" as used in various statutes, and especially tariff statutes, has been frequently defined by the courts. The word "articles" is used hundreds of times in most tariff statutes, and obviously it is not always used in its broadest sense.

The word "article" is defined by Webster's New International Dictionary as follows:

6. Something considered by itself and as apart from other things of the same kind or from the whole of which it forms a part; also, a thing of a particular class or kind, as distinct from a thing of another class or kind; as an *article* of merchandise; salt is a necessary *article.*

In the first section of the Tariff Act of 1930, in providing for the imposition of certain rates of duty on merchandise under title I, the dutiable list, Congress said: "and paid upon all articles when imported from any foreign country." Unquestionably, Congress meant, by employing that language, to include under the word "articles" any provided-for substance, material or thing of whatever kind or character that was imported into this country. As it did in many other places in the act, it there used the word in its broad sense. Elsewhere in the

act, it may be observed that the word is frequently used in a narrower sense. For instance, in paragraph 1529 (a) is found the phrase "Laces, lace fabrics, and lace articles, made by hand" and in paragraph 1013 there is a provision for "all articles * * * made or cut from such damask."

Having in mind that Congress, in using the word "articles" clearly meant it to have a broad meaning in some provisions of the tariff act and a restricted meaning in others, the sole question for our determination is whether or not in providing the high rate of duty of 85 per centum ad valorem in the aforesaid glass paragraph—218 (a)—it intended either or both of the expressions "chemical * * * articles" or "scientific articles" to include the substance or material glass wool.

We have found nothing either in the context of paragraph 218 (a) or the tariff act as a whole, or in anything connected with the legislative history relating to the paragraph which would suggest that Congress in using the word "articles" therein used it in its narrow or restricted sense. The many authorities cited by the Government and by the importer have been carefully examined and a few of them will be discussed briefly hereinafter.

The material is not a new article of commerce. The question of its proper dutiable classification under prior tariff acts (whose provisions for glass articles, etc., differ from those involved here) has been the subject of litigation. The framers of the Tariff Act of 1922, unquestionably, were thoroughly familiar with the material, its use and the method of its manufacture. Every source of information consulted suggests but a single use for the article, to wit, as a chemical filtering medium in the laboratory. Strong acids cannot be filtered except with the use of a material that resists the destructive effects of the acid. The material at bar is glass. It is concededly scientific in character when its use is considered. Congress evidently intended to include within the paragraph chemical articles of glass which were used in handling chemicals in the manner shown by the instant record. We know of no reason why Congress, when it prepared the paragraph involved, did not have in mind glass wool which was the product of the glassworker and which was one of the necessary tools or implements with which the scientist worked with chemicals.

. Paragraph 218 (a) appeared for the first time in the Tariff Act of 1922 as paragraph 218 (the two provisions being identical in all respects with which we are here concerned), and, for the first time in the history of tariff legislation, as far as we know, there appeared a provision in the glass schedule for "all scientific articles, utensils [etc.]." When the Committee on Finance of the Senate made its report on the bill which became the Tariff Act of 1922, it had the following to say on the subject of glass:

## GLASS

Of outstanding importance is the complete reconstruction of paragraph 218, which now separates the pressed and blown glass trade into logical divisions, thereby enabling intelligent consideration of the needs of the different branches of the industry. The necessity of maintaining and strengthening the newly developed glass industries, including the manufacture of chemical and optical glass, has been met by writing in duties that should encourage research and expansion of the domestic industry. These duties will not prohibit the importation of items which our new industries have not yet been able to make; nor are they higher than are actually required to prevent the waste of the capital now invested in these new industries. Furthermore, the employment of the scientific and highly skilled workmen who entered these industries during the war should be continued.

In its treatment of glass in the Tariff Act of 1930, Congress again made very material changes from what had previously appeared in tariff acts. Paragraph 218 of the Tariff Act of 1922 was divided into subparagraphs and various glass articles were separately dealt with. However, the language "Biological, chemical, metallurgical, pharmaceutical, and surgical articles and utensils of all kinds including all scientific articles" found in paragraph 218, Tariff Act of 1922, was retained in subdivision (a) of paragraph 218, Tariff Act of 1930. When the bill which became the Tariff Act of 1930 was reported upon by the Committee on Finance of the Senate, it was stated in the report that:

The increased rate for chemical and scientific glassware was imposed in order to encourage the production in this country of articles which are necessary in time of war. Prior to 1914 the United States depended almost wholly upon foreign producers for the supply of such glassware. American manufacturers now supply a considerable proportion of the domestic requirements, and the American industry can be maintained if it is adequately protected.

Legislative history is relied upon by the importer. We have carefully examined the same and find nothing therein contained which would suggest that Congress did not regard glass wool, used exclusively for scientific or chemical purposes, as being embraced within the word "articles," and we think that the provisions in controversy were not used in the narrower sense contended for by the importer.

The importer and the Government, as well as the trial court, have relied upon certain decisions of this and other courts as being in support of the various positions taken. While we find no case in which the facts and issues involved are substantially on all fours with the facts and issues at bar, we have found no decision which we think requires a holding here that the provisions "chemical * * * articles" and "scientific articles" in the subparagraph at bar should be given a meaning so narrow as to exclude the instant merchandise from classification thereunder.

In *Junge* v. *Hedden*, 146 U. S. 233, the Supreme Court of the United States held that sheets of india rubber were "articles composed of india-rubber" although they were mere material in the piece. In that

case the court pointed out, as we have hereinbefore, that Congress used the word "articles" in the first portion of the act and elsewhere in a broader sense than that applying to the word where it was used with a clearly intended restricted meaning. Concerning the word "articles" the court said:

In common usage, "article" is applied to almost every separate substance or material, whether as a member of a class, or as a particular substance or commodity.

In *United States* v. *Embossing Co. et al.*, 3 Ct. Cust. Appls. 220, T. D. 32536, the court had before it modeling materials, one of which was known as "plasticine." The "plasticine" was a mixture of water, vaseline, chalk, flour, tallow, sulphur, etc., and evidently was a kind of modeling clay. It was classified by the collector under the provision in paragraph 95 of the tariff act of 1909 for "Articles and wares composed wholly or in chief value of earthy or mineral substances." The importer contended, the trial tribunal held, and we affirmed such holding, that the modeling materials imported in the mass were nonenumerated manufactured articles, and were not articles or wares composed of earthy or mineral substances. This conclusion was based largely upon a consideration of the context of the provision and of other parts of the tariff act and the legislative history involved. This case does not seem to be very much in point except that it illustrates the fact that the word "articles" which is so frequently used in tariff acts has meanings varying with the purposes to be accomplished.

While, as before stated, no court decision squarely in point with the issue involved here has been cited, we think that the decisions in the following cases have a bearing upon the issue presented and support the position which we here take: *Lussky, White & Coolidge, Inc.* v. *United States*, 21 C. C. P. A. (Customs) 201, T. D. 46727 and *Buehne Steel Wool Co.* v. *United States*, 159 Fed. 107.

In *Lussky, White & Coolidge, Inc.* v. *United States, supra*, the court had before it cotton upholstery cloth imported "in the piece" in lengths of approximately 50 to 60 yards. This court held it to respond to the provision "All the articles enumerated or described in this schedule," notwithstanding the fact that it was there earnestly contended by the importer that the word "articles" in the paragraph there involved meant only such articles as were made from cotton cloth, and that cloth in the piece could not be regarded as an article. We there said:

In its decision overruling the protests the court below, in an opinion by Kincheloe, Judge, held that, in a tariff sense, the term "articles" is sufficiently comprehensive to include, as stated by the Supreme Court in the case of *Junge* v. *Hedden*, 146 U. S. 233–238, "almost every separate substance or material, whether as a member of a class, or as a particular substance or commodity", except where

the Congress has indicated that the term shall have a narrower significa-tion. * * *

That the trial court has correctly stated the rule we have no doubt.

In *Buehne Steel Wool Co.* v. *United States, supra,* the Circuit Court of Appeals of the Second Circuit held that the phrase "articles manu-factured from * * * steel * * * wire" was broad enough to include and did include steel wool which was manufactured from steel wire by a patented process. The court specifically referred to the merchandise as an article. The importer in this case contends that the provision which included the word "articles" which was involved in the decision of that case was in the nature of a catch-all provision, and argues that this renders the decision of no importance in determining the issue in the instant case. While the provision appeared in a proviso, it is not seen how it can be contended that the provision "articles manufactured from * * * steel * * * wire" was a basket provision. Regardless of this fact it was a clear holding that steel wool was to be regarded as an "article" for tariff purposes.

The case of *Rudolf Aich* v. *United States, supra,* relied upon by the Government is clearly not in point. Glass wool similar to that at bar was there held by the Board of General Appraisers (now the United States Customs Court) to be dutiable as chemical glassware for use in laboratories under paragraph 107 of the tariff act of 1890. Regardless of any other circumstance that might distinguish the issue in that case from that in the case at bar, it is sufficient to point out that the provision "chemical glassware" differs from the provi-sions "chemical * * * articles" or "scientific articles" and that the issue presented here could not have been involved there.

The case of *In re Henry Heil Chemical Co.*, Abstract 37301, 28 Treas. Dec. 186, is relied upon by the importer. There, glass wool was assessed for duty under paragraph 98 of the tariff act of 1909 which contained the provisions "Glass bottles, decanters, and all articles of every description composed wholly or in chief value of glass, ornamented or decorated in any manner or * * *" and "all articles of every description, including bottles and bottle glass-ware, composed wholly or in chief value of glass blown either in a mold or otherwise." It was claimed to be dutiable under the provi-sion of paragraph 109 of said act for "all glass or manufactures of glass." It was held that the merchandise was not dutiable as assessed but was properly dutiable under the last above-quoted provision. It seems too obvious to require extended discussion that while the provision under which the importer here claims the goods to be dutiable and the provision under which the goods there were held to be dutiable were similar, the provisions under which the goods were there assessed differ vastly from the controverted provision appearing

in the paragraph under which the goods were assessed in the instant case. Not only did the provisions under which the goods were assessed in that case contain specifically named articles which had form and shape, like bottles, decanters, etc., but as a part of the first half of said paragraph 98 there was a provision for ornamentation or decoration, etc., and as a part of the second provision therein there was a limitation that the glass articles must be composed of blown glass.

All the other authorities cited by the parties have been examined. We think, however, that none are sufficiently in point to require consideration here.

Since the merchandise at bar responds to the word "articles" as used in said paragraph 218 (a), we think it is therein specially provided for.

We conclude that the trial court erred in sustaining the protest and its judgment is *reversed*.

### DISSENTING OPINION

GARRETT, Presiding Judge: I am unable to concur in the conclusion reached by the majority, and even if I agreed to the conclusion I should have to dissent from certain of the reasoning upon which it is based.

Preliminary to stating the reasons which lead me to a different conclusion, I would like to emphasize the fact that the glass wool here involved was imported in a mass, being enclosed in cases, one of which contained 105 pounds and the other 128 pounds. It was in bulk form, and obviously the whole mass was not used at one time for laboratory purposes. The only reasonable assumption is that when a person desired to use it for filtering acids, he tore off such quantity as the immediate case before him required and used it in that form. I do not believe that this mass substance, as imported, constituted an article within the meaning of paragraph 218 (a).

The majority base classification upon use, that is chief use. It is true that so far as the testimony in this record is concerned the statement is that "Its main use is for that [filtering] purpose—fine glass wool of this type." I may say that I do not think the very meager evidence presented here ordinarily would be accepted by this court as sufficient, standing alone, to establish chief use. The testimony of the witness was confined almost wholly to his own personal experience. However, I assume chief use for laboratory purposes to have been implicit in the collector's classification, and the burden rested upon the importer to overcome the presumption of correctness so implied. It would seem from various standard authorities that this might have been done.

Webster's Dictionary, Second Edition, 1939, defines glass wool as "Spun glass resembling wool, used in the filtration of acids, heat in-

sulation, etc.," and defines spun glass as "Glass drawn into a thread while liquid."

Chemistry in Industry, Volume 1, published by The Chemical Foundation, Inc., at page 149, states the following:

The space in your refrigerator between the enameled interior and wooden exterior may be filled with glass wool. If you heat the end of a glass rod you can draw the soft glass out to the diameter of the thinnest fiber. The glass threads are so fine that more than two thousand would have to lie side by side to fill an inch space and a ruler 1 foot long and 2 inches square (4 pounds of glass) can be drawn into a thread which will reach from New York to San Francisco. A mass of this material looks like a silky wool, so it is called glass wool. Many years ago, toy animals were made of it in France, hardly a good use, as the tiny glass splinters penetrate the skin and produce an annoying itch. Now it is used to keep hot things hot and cold things cold; in other words, as an insulating material. Glass wool is very light. This insulation used around the steam lines of a battleship instead of ordinary insulating material has been estimated to lighten the ship's load 380 tons, equivalent to the weight of forty-five hundred people, further requiring less draft and consequently effecting a saving of fuel.

It will be noted that nothing is said above about use in hospitals, laboratories, schools, etc. This is probably due to the fact that the volume was discussing only "chemistry in industry."

In Scholes' Modern Glass Practice, at page 189, it is said—

Glass wool is made by blowing a high-velocity jet of steam through a stream of liquid glass. Rock wool and slag wool, as the names imply, are similarly formed from melted natural rocks or remelted slags. These products form excellent insulating material for use in stoves, refrigerators and buildings. Refined processes for making glass fibers, not yet made public, produce filaments which can be formed into yarns and threads of strengths as high as 250,000 pounds per square inch cross-section. Glass textiles, woven from such threads, seem likely to find important uses, one of which is in filter cloths for corrosive liquids.

Were we at liberty to look to those authorities in determining the matter of chief use here, it would seem that the question of whether such chief use is, in fact, in laboratories, hospitals, schools, etc., would be rendered very doubtful. I have given these statements merely as a matter of information, however, because even assuming the chief use to have been for the purposes defined in paragraph 218 (a), *supra*, I still do not believe the material involved (the witness referred to it as material) is an article within the sense of the paragraph. To my mind, the word "article" as there used means an article having a definite form, and that it was not the intent of Congress that it should be construed in the broad sense in which every physical object on earth may be called an article. Furthermore, I do not feel that sufficient weight has been given to the principle of legislative ratification of judicial construction.

As is stated in the majority opinion, the United States Board of General Appraisers (now the United States Customs Court), in the case of *In re Henry Heil Chemical Co.*, Abstract 37301, 28 Treas. Dec. 186, held merchandise, seemingly quite similar to that at issue

here, classifiable under a paragraph of the tariff act of 1909 which had the same meaning as the paragraph under which the importer here claims. It is true that the competing paragraph in that case was different in language from paragraph 218 (a), *supra*, and the majority distinguish the cases on that ground, but I find nothing in the differences which seems to me to justify a holding that the new language affects the merchandise involved. Certainly there is no *eo nomine* provision for glass wool in paragraph 218 (a). It is held to be classifiable there purely by construction of the paragraph. It is not shown here what the administrative practice was after the above decision up until the present classification was made, but it is a fair assumption that the administrative officers respected the judicial decision and followed it.

I have examined the legislative history and I find nothing in the summaries of tariff information prepared by the Tariff Commission which makes any reference whatever to glass wool, and there is nothing in the report of the Senate committee which, to my mind, indicates that glass wool was within the thought of Congress in connection with paragraph 218 (a). Congress must be presumed to have had knowledge of the judicial decision above referred to, and it would seem to me that, as is urged by counsel for the importer, there would have been a more definite provision had Congress intended a change in the classification pronounced in that decision. The merchandise obviously falls squarely within the provision of paragraph 230 for manufactures of glass, not specially provided for, and I think the judgment of the trial court should be affirmed.