**Slip Op. 05-49**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: SENIOR JUDGE NICHOLAS TSOUCALAS**

_____
                                         :
FORMER EMPLOYEES OF COMPUTER             :
SCIENCES CORPORATION,                    :
                                         :
                Plaintiffs,              :
                                         :
                                         :    Court No. 04-00149
        v.                               :
                                         :
UNITED STATES SECRETARY OF LABOR,        :
                                         :
                Defendant.               :
_____  :

        Plaintiffs, Former Employees of Computer Sciences Corporation ("Plaintiffs"), move pursuant to USCIT R. 56.1 for judgment upon the agency record or, alternatively, for a remand for further investigation. Plaintiffs challenge the United States Department of Labor's ("Labor") determinations denying them eligibility for trade adjustment assistance benefits under Title II of the Trade Act of 1974, as amended 19 U.S.C. § 2272 (West Supp. 2004) (the " Trade Act"). See Negative Determination Regarding Eligibility To Apply for Worker Adjustment Assistance ("Negative Determination"),TA-W-53,209 (Dep't Labor Oct. 24, 2003) Admin. R. 55-56; Notice of Determinations Regarding Eligibility To Apply for Worker Adjustment Assistance ("Notice of Determination"), 68 Fed. Reg. 66,877-78 (Dep't Labor Nov. 28, 2003); Notice of Negative Determination on Reconsideration for Computer Sciences Corporation, Financial Services Group ("FSG"), East Hartford, Connecticut ("Negative Reconsideration Determination"), Admin. R. 78-80 (Dep't Labor Feb. 3, 2004) published at 69 Fed. Reg. 8,488 (Dep't Labor Feb. 24, 2004); Notice of Negative Determination on Reconsideration on Remand for Computer Sciences Corporation, Financial Services Group, East Hartford, Connecticut ("Remand Final Negative Determination"), Supplemental Admin. R. 13-17 (Dep't Labor July 29, 2004) published at 69 Fed. Reg. 48,526 (Dep't Labor Aug. 10, 2004). Labor concluded that the employees did not meet the requirements of the Trade Act, basing its conclusion on its findings of fact that: (1) a significant number of workers in Computer Sciences Corporation's ("CSC") Financial Services Group ("FSG") in East Hartford, Connecticut were not separated; (2) Plaintiffs were not involved in the production of articles and did not complete software on physical media; (3) there has not been a shift in production to India of software components and completed software like or directly competitive with those formerly produced by

plaintiffs; (4) there has not been or is likely to be an increase in imports of articles like or directly competitive with those formerly produced by plaintiffs.

Plaintiffs request the Court remand this case to Labor with instructions to certify Plaintiffs as eligible for trade adjustment assistance ("TAA") benefits. Alternatively, Plaintiffs request the Court remand this case to Labor with instructions to further investigate because of inadequacies in Labor's previous investigations.

**Held:** Plaintiffs' 56.1 motion is granted; case remanded.

Dated:    April 14, 2005

Sidley Austin Brown & Wood LLP, (Neil R. Ellis, Rajib Pal, and Sharon H. Yuan) for plaintiffs.

Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Delfa Castillo); of counsel: Peter Nessen, Office of the Solicitor, United States Department of Labor, for defendant.

## OPINION AND ORDER

**TSOUCALAS, Senior Judge:**  Plaintiffs, Former Employees of Computer Sciences Corporation ("Plaintiffs"), move pursuant to USCIT R. 56.1 for judgment upon the agency record or, alternatively, for a remand for further investigation. Plaintiffs challenge the United States Department of Labor's ("Labor") determinations denying them eligibility for trade adjustment assistance benefits under Title II of the Trade Act of 1974, as

amended 19 U.S.C. § 2272 (West Supp. 2004) (the " Trade Act"). <u>See</u> <u>Negative Determination Regarding Eligibility To Apply for Worker</u> <u>Adjustment Assistance</u> ("<u>Negative Determination</u>"),TA-W-53,209 (Dep't Labor Oct. 24, 2003) Admin. R. 55-56; <u>Notice of Determinations</u> <u>Regarding Eligibility To Apply for Worker Adjustment Assistance</u> ("<u>Notice of Determination</u>"), 68 Fed. Reg. 66,877-78 (Dep't Labor Nov. 28, 2003); <u>Notice of Negative Determination on Reconsideration</u> <u>for Computer Sciences Corporation, Financial Services Group</u> ("<u>FSG</u>"), <u>East Hartford, Connecticut</u> ("<u>Negative Reconsideration</u> <u>Determination</u>"), Admin. R. 78-80 (Dep't Labor Feb. 3, 2004) <u>published at</u> 69 Fed. Reg. 8,488 (Dep't Labor Feb. 24, 2004); <u>Notice</u> <u>of Negative Determination on Reconsideration on Remand for Computer</u> <u>Sciences Corporation, Financial Services Group, East Hartford,</u> <u>Connecticut</u> ("<u>Remand Final Negative Determination</u>"), Supplemental Admin. R. 13-17 (Dep't Labor July 29, 2004) <u>published at</u> 69 Fed. Reg. 48,526 (Dep't Labor Aug. 10, 2004). Labor concluded that the employees did not meet the requirements of the Trade Act, basing its conclusion on its findings of fact that: (1) a significant number of workers in Computer Sciences Corporation's ("CSC") Financial Services Group ("FSG") in East Hartford, Connecticut were not separated; (2) Plaintiffs were not involved in the production of articles and did not complete software on physical media; (3) there has not been a shift in production to India of software components and completed software like or directly competitive with

those formerly produced by plaintiffs; (4) there has not been or is likely to be an increase in imports of articles like or directly competitive with those formerly produced by plaintiffs.

Plaintiffs request the Court remand this case to Labor with instructions to certify Plaintiffs as eligible for trade adjustment assistance ("TAA") benefits. Alternatively, Plaintiffs request the Court remand this case to Labor with instructions to further investigate because of inadequacies in Labor's previous investigations.

## BACKGROUND

The Trade Act provides for TAA benefits to workers who have lost their jobs as a result of increased imports or shifts of production out of the United States. See 19 U.S.C. § 2272. Such benefits include training, re-employment services and various allowances including income support, job search and relocation allowances.

Plaintiffs are former employees of CSC's financial services group who were separated from their employment as information technology professionals on February 28, 2003 (Monali Patel) and May 30, 2003 (Mark Bain and Deborah Corkindale). See Petition for Trade Adjustment Assistance, Sept. 22, 2003, Admin. R. at 2. On September 22, 2003, Plaintiffs petitioned Labor to obtain

certification of eligibility for TAA benefits. See id. Labor initiated an investigation and determined that Plaintiffs did not produce an article within the meaning of section 222(c)(3) of the Trade Act and, therefore, were not eligible for TAA benefits. See Negative Determination, Admin. R. at 55-56. Plaintiffs appealed Labor's determination on November 24, 2003. See Mem. P. & A. Supp. Mot. Pls. J. Agency R. ("Pls.' Mem.") at 5. Labor agreed to reconsider its determination and found that the "workers did produce widely marketed software components on CD Rom and tapes, and thus did produce an article within the meaning of the Trade Act." Negative Reconsideration Determination, 69 Fed. Reg. at 8,488. Labor, however, again denied Plaintiffs request for certification because "although [CSC] did report that some 'source coding' did shift to India in the relevant period, [CSC] does not import completed software on physical media that is like or directly competitive with that which was produced at the subject facility. Business development, design, testing, and packaging remain in the United States." Id.

On March 15, 2004, Plaintiffs sought judicial review and filed a letter with the Court which the Clerk of the Court deemed as the filing of a summons and complaint. See Pls.' Mem. at 7. Labor consulted with Plaintiffs and on May 28, 2004, filed a consent motion for voluntary remand indicating that it would further

investigate conflicting information in the record. See Consent Mot. Voluntary Remand (May 28, 2004). The Court granted this motion on June 2, 2004. Upon remand, Labor reviewed previously submitted information and contacted CSC officials "to determine the process in which software code is fixed onto tangible media, identify which functions were shifted to India, and determine whether the subject worker group meets the statutory criteria for TAA certification." Remand Final Negative Determination, 69 Fed. Reg. at 48,526. Labor found that CSC had not shifted any "packaging" functions to India. See id. Moreover, Labor found that all "storing" and "copying" of the completed software onto physical media and the delivery of the software continues to take place in the United States. See id. CSC reported to Labor that it does not import any completed software which is like or directly competitive with the completed software produced in East Hartford. See id. Accordingly, Labor again denied Plaintiffs' eligibility for TAA benefits. See id. Plaintiffs now challenge Labor's determinations denying them certification for eligibility for TAA benefits.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 19 U.S.C. § 2395(c) (2000) and 28 U.S.C. § 1581(d) (2000).

**STANDARD OF REVIEW**

In reviewing a challenge to Labor's determination of eligibility for trade adjustment assistance, the Court will uphold Labor's determination if it is supported by substantial evidence on the record and is otherwise in accordance with law. See 19 U.S.C. § 2395(b) (2000); Woodrum v. Donovan, 5 CIT 191, 193, 564 F. Supp. 826, 828 (1983), aff'd, Woodrum v. United States, 737 F.2d 1575 (Fed. Cir. 1984)). "Substantial evidence is something more than a 'mere scintilla,' and must be enough reasonably to support a conclusion." Ceramica Regiomontana, S.A. v. United States, 10 CIT 399, 405, 636 F. Supp. 961, 966 (1986), aff'd, 810 F.2d 1137 (Fed. Cir. 1987); see also Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Additionally, "the rulings made on the basis of those findings [must] be in accordance with the statute and not be arbitrary and capricious, and for this purpose the law requires a showing of reasoned analysis." Former Employees of Rohm & Haas Co. v. United States, 27 CIT ___, ___, 246 F. Supp. 2d 1339, 1346 (2003) (quoting Int'l Union v. Marshall, 584 F.2d 390, 396 n.26 (D.C. Cir. 1978)).

Moreover, although "the nature and extent of the investigation are matters resting properly within the sound discretion of [Labor,]" Former Employees of Galey & Lord Indus. v. Chao, 26 CIT __, __, 219 F. Supp. 2d 1283, 1286 (2002) (quoting Former Employees

of CSX Oil & Gas Corp. v. United States, 13 CIT 645, 651, 720 F.
Supp. 1002, 1008 (1989) (citation omitted)), "[g]ood cause [to
remand] exists if [Labor's] chosen methodology is so marred that
[Labor's] finding is arbitrary or of such a nature that it could
not be based on substantial evidence." Id. (citations omitted).
The Court's review of Labor's determination denying certification
of eligibility for TAA benefits is confined to the administrative
record before it. See 28 U.S.C. § 2640(c) (2000); see also Int'l
Union v. Reich, 22 CIT 712, 716, 20 F. Supp. 2d 1288, 1292 (1998).

## CONTENTIONS OF THE PARTIES

### A.    Plaintiffs' Contentions

Plaintiffs argue that record evidence does not support Labor's
determination that: (1) a significant number of workers in CSC's
FSG in East Hartford, Connecticut, have not become separated; (2)
Plaintiffs' were not involved in the production of articles within
the meaning of the Trade Act and consequently did not complete
software on physical media; (3) there has not been a shift in
production by CSC to India of software components and completed
software like or directly competitive with those produced by CSC;
and (4) there has not been or is likely to be an increase in
imports of articles like or directly competitive with those
produced by CSC. See Pls.' Mem. at 11.

Plaintiffs assert that they were engaged in the production of an article within the meaning of the Trade Act and completed software on physical media. See id. at 12. Plaintiffs argue that Labor erred in concluding that software components are services and not articles. See id. at 13-14. Plaintiffs assert that "[i]n designing and coding elements of Vantage-One, Plaintiffs created or manufactured a tangible commodity. Plaintiffs created the blueprints for the programs, as well as the source code itself . . . ." Id. at 17. The ordinary meanings of the words "tangible" and "services" indicate that software components are tangible and therefore constitute articles not services. See id. at 15-16. Plaintiffs maintain that software design and code does not merely constitute a contribution of labor, skill, or advice. See id. at 16. Rather, software design and code requires "the creation of a new object that performs specific tasks, no different from the creation of a new machine." Id.

Plaintiffs argue that, to effectuate the remedial purpose of TAA benefits, section 222 of the Trade Act "must be interpreted broadly to include shifts in various stages of production of an article." Id. at 18. Plaintiffs note that the Trade Act does not define the term "production." See id. Based on the common meaning of the term and court precedent, Plaintiffs argue that the term "does not focus only on the end stage of the production of an

article . . . but rather on the various stages of production." Id.
at 19.  Accordingly, a shift in production of any single function
to India satisfies the requirement of section 222(a)(2)(B)(i) of
the Trade Act.  See id. at 20.  Plaintiffs note that "[i]n the
software industry, the designer, coder, tester, and packager are
all engaged in the production of completed software . . . ." Id.
Workers who produce software components which are combined and
packaged to produce completed software on physical media are
therefore engaged in the production of completed software. See id.
Thus, Labor's investigation improperly focused on whether
marketing, storing, packaging and delivery of completed software
products had shifted overseas rather than focusing on whether any
single function had shifted abroad.  See id. at 21.

Plaintiffs also argue that software components, even when
transmitted electronically, constitute articles because under the
Harmonized Tariff Schedule of the United States ("HTSUS") all goods
are subject to duty unless they are exempt under a specific
provision.  See Pls.' Mem. at 15.  The HTSUS exempts
telecommunication transmissions from duty, but such an exemption
"does not suggest that an item is not a good or an article." Id.
Plaintiffs maintain that Labor ignored a subsequent ruling by the

United States Department of Customs[1] ("Customs") in which it found that software modules, such as source code, are objects of trade and commerce and are consequently considered "merchandise" or "goods." See id. at 22. (citing Customs Headquarters Ruling Letter, HQ 114459 (Sept. 17, 1998)). Plaintiffs assert that Labor "must defer to Customs' interpretation of the HTSUS, as Customs is the agency charged by Congress with applying and interpreting the HTSUS." Id.

Finally, Plaintiffs contend that Labor merely investigated whether CSC imported completed software and did not investigate whether there has been or is likely to be an increase in imports of software components. See id. at 21. Furthermore, record evidence demonstrates that "imports of software components increased relative to domestic production during the years preceding Plaintiffs' separation." Id. at 23. Plaintiffs assert that "evidence of a firm shifting its production facilities abroad indicates a likelihood of an increase in imports of like articles even if that firm had not yet begun importing its foreign-produced product." Id. at 24. Plaintiffs note that, as of June 2003, CSC has established three centers in India with a workforce of 1,000 employees. See id. Consequently, Labor erred in determining that

---

[1] The United States Customs Service was renamed the Bureau of Customs and Border Protection of the Department of Homeland Security, effective March 1, 2003. See H.R. Doc. No. 108-32 (2003).

CSC did not shift production of articles like or directly competitive with those formerly produced by Plaintiffs.

**B.    Labor's Contentions**

Labor responds that its determinations are supported by substantial evidence and in accordance with law. See Def.'s Resp. Pls.' Mot. J. Upon Admin. R.("Labor's Resp.") at 9-26. Labor contends that Plaintiffs falsely assume that it "has already found that, by writing software code, petitioners were creating a component." Id. at 10. Labor asserts that Plaintiffs' assumption is "apparently based upon the erroneous inference that Labor deemed 'coding,' 'design,' 'testing,' and 'delivery' to constitute 'software components.'" Id. at 11. Labor argues that "code" is not a software component. See id. at 12. Rather, Labor maintains that "coding is only one function or process in the development of a complete 'article.'" Id. Labor further argues that whether Plaintiffs produced software components in the United States is not relevant; "[w]hat matters is whether the work transferred to India entailed the creation of an article." Id. Labor asserts that, in context, code is only one part or process of the development of a complete article and that the record supports its determination that coding does not constitute the creation of a software component. See id. at 12-13.

Labor further contends that the imported code from India is not like or directly competitive with the domestically produced completed software. See id. at 13-16. While the domestic product is in final form and on physical media, code from India is not in its final form or onto physical media. See id. at 13-22. Labor points out that "CSC informed Labor 'that the subject software is copied from a central computer system onto physical media. When the software is ordered by a customer, a copy is made at the subject facility and delivered to the customer.'" Id. at 13-14 (citation omitted) (emphasis in original). During its investigation, Labor found that the transfer of software code onto physical media, the packaging and the delivery of the software all take place in the United States. See id. at 14. Therefore, Labor determined that all the steps involved in creating CSC's completed software is completed domestically. See id.

Labor notes that code from India is electronically transferred from India to East Hartford, where it is stored in a central computer. See Labor's Resp. at 14. Consequently, code from India is not tangible because it is fixed onto physical media in the United States. See id. Labor argues that, under 20 C.F.R. § 90.2 (2003), an article must be a tangible item. See id. at 14-15. Labor claims that code from India is not an article because it is not a tangible item. See id. at 15. Labor maintains that its

"longstanding practice is to consider 'articles' to be goods that are marketable, fungible, and interchangeable for commercial purposes and that enter into the stream of commerce." Id. Here, code from India is not fungible nor is it interchangeable with the completed software produced by CSC domestically. See id. Labor also argues that code from India does not constitute an article because the term "code" is not contained in the HTSUS. See id. Labor maintains that inclusion in the HTSUS "is a prerequisite for an item to be considered an article." Id. at 15-16.

Labor contends that it properly interpreted the statute to require that an article be a tangible item. See id. at 16. Labor maintains that "[t]he literal reading of 'article' supports Labor's interpretation that code, independent of carrier media, is not an 'article.'" Id. at 17 (emphasis in original). Labor asserts that because code from India is transmitted electronically and not on physical media it cannot reasonably be considered a tangible item because software in such form lacks substance. See id. at 18. Moreover, if the ordinary meaning of the term "article" does not support Labor's interpretation of the statute, then its interpretation is entitled deference under by Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984). See Labor's Resp. at 20-22. Labor maintains that its interpretation of the term "article" is supported by the term's

ordinary meaning "as viewed in the context of the statute and legislative history, and there is no valid justification for interpreting the statutory term, 'article,' to include intangible India-origin code . . . ." Id. at 21.

### ANALYSIS

The Court finds that Labor's determinations are based on incomplete factual findings and its rulings derived from those findings do not demonstrate a reasoned analysis. See Former Employees of Rohm & Haas Co, 27 CIT ___, ___, 246 F. Supp. 2d at 1346. Labor is required to certify a group of workers as eligible to apply for TAA benefits if "a significant number or proportion of the workers in such workers' firm, or appropriate subdivision of the firm, have become totally or partially separated [from employment]," and if one of two further sets of conditions are satisfied. 19 U.S.C. § 2272(a). First, such workers may qualify if:

> (i) the sales or production, or both, of such firm or subdivision have decreased absolutely; (ii) imports of articles like or directly competitive with articles produced by such firm or subdivision have increased; and (iii) the increase in imports . . . contributed importantly to such workers' separation or threat of separation and to the decline in the sales or production of such firm or subdivision.

19 U.S.C. § 2272(a)(2)(A). Second, the workers may qualify if there has been a shift in production to a foreign country by the firm or subdivision of articles like or directly competitive with

articles produced by the firm or subdivision, and if any of the following conditions are satisfied: (1) the shift in production was to a country which is a party to a free trade agreement with the United States; (2) the shift in production was to a country that is a beneficiary under one of the various trade preference programs; or (3) there had been or is likely to be an increase in imports of articles like or directly competitive with articles produced by the subject firm or subdivision. See 19 U.S.C. § 2272(a)(2)(B). Labor concedes that a significant number of workers were separated from their jobs in CSC's FSG during the relevant period, see Labor's Resp. at 10, thus satisfying the first requirement of 19 U.S.C. § 2272(a).

As this Court has stated, "[w]hile Labor has 'considerable discretion' in conducting its investigation of TAA claims, 'there exists a threshold requirement of reasonable inquiry. Investigations that fall below this threshold cannot constitute substantial evidence upon which a determination can be affirmed.'" Former Employees of Sun Apparel of Tex. v. United States, 28 CIT ___, ___, 2004 Ct. Intl. Trade LEXIS 105 *22-23 (Aug. 20, 2004) (internal citations omitted). This Court has noted that "because of the ex parte nature of the certification process, and the remedial purpose of the [TAA] program, [Labor] is obliged to conduct [its] investigation with the utmost regard for the

interests of the petitioning workers." Abbott v. Donovan, 7 CIT 323, 327-28, 588 F. Supp. 1438, 1442 (1984) (internal quotations and citation omitted).  For the reasons stated below, the Court finds that Labor's investigations are inadequate and therefore remands this case for further investigation and redetermination.

Labor's determination that Plaintiffs are not eligible for TAA benefits turns on its determination that the imported code from India is not "like or directly competitive" with the completed software produced by Plaintiffs while employed by CSC.  See Negative Reconsideration Determination, 69 Fed. Reg. at 8,488; Remand Final Negative Determination, 69 Fed. Reg. at 48,526.  Labor found Plaintiffs ineligible for TAA benefits because CSC "does not import completed software on physical media that is like or directly competitive with that which was produced at the subject facility." Negative Reconsideration Determination, 69 Fed. Reg. at 8,488.  Labor contends that "[n]othing in the administrative record . . . supports the inference that 'code,' for example, constitutes a 'software component' or an article."  Labor's Resp. at 12. Furthermore, Labor argues that whether Plaintiffs produced a software component is not relevant. See id. at 12.  Labor notes that "the storing of completed software onto physical media, the copying of the completed software onto physical media, and the delivery of the software continue to take place at the subject

facility." <u>Remand Final Negative Determination</u>, 69 Fed. Reg at 48,526. Labor insists that the central basis for its determination is whether the code imported from India is an article like or directly competitive with the completed software produced by Plaintiffs. The Court does not agree.

While Labor may be correct that the code from India is not like or directly competitive with the completed software on physical media produced in the United States, it does not follow that the code from India is not like or directly competitive with a function used in producing the completed software in the United States. Labor notes that "coding is only one function or process in the development of a complete 'article.'" Labor's Resp. at 12. Labor, however, asserts that code is not a software component. <u>See id.</u> at 12-16. Labor's conclusion is counterintuitive because, if code is a process in the development of completed software, then code must also be considered a component of such software.

Labor also contends that code is not an article. <u>See</u> Labor's Resp. at 13-16. Plaintiffs respond that they were engaged in the production of software components which are articles under the Trade Act. <u>See</u> Pls.' Mem. at 13-18. Plaintiffs argue that an item does not have to be tangible in order to be an article. <u>See</u> Pls.' Reply Def.'s Resp. Pls.' Mot J. Upon Admin. R. at 5. Nonetheless, Plaintiffs contend that code is tangible and therefore an article

because it "is something 'capable of being possessed or realized' and not simply the contribution of labor, skill, or advice." Id. at 6 (citation omitted). The Court finds that the record supports neither Labor's nor Plaintiffs' contentions. The Trade Act requires Labor to examine the articles produced by petitioners and compare them to the articles imported from abroad. See 19 U.S.C. § 2272(a)(2). Based on the administrative record, Labor has failed to satisfy its obligation to compare the domestic product with the foreign made product. Consequently, the Court finds that Labor's investigation failed to meet the threshold requirement of reasonable inquiry. See Former Employees of Sun Apparel of Tex., 28 CIT at ___, 2004 Ct. Intl. Trade LEXIS 105 *22-23 (internal citation omitted); see also Former Employees of Hawkins Oil and Gas, Inc. v. United States, 17 CIT 126, 130, 814 F. Supp. 1111, 1115 (1993) ("[N]o deference is due to determinations based on inadequate investigations."). An inadequate investigation fails to produce a complete record with further findings of fact which may lead to a different conclusion. Here, Labor failed to conduct an adequate investigation and, therefore, the administrative record fails to substantially support Labor's determinations.

**CONCLUSION AND ORDER**

Whether Plaintiffs produced software components is highly relevant to determining whether Plaintiffs are eligible for TAA

benefits.  Accordingly, the Court remands this matter to Labor with instructions to investigate whether Plaintiffs produced code and if they did, whether the production of code shifted to India.  Without further investigation, it is uncertain whether the code from India is like or directly competitive with the article or component of such article produced by Plaintiffs in the United States. Moreover, the Court finds that Labor's contention that code is not a software component nor an article is not supported by substantial evidence.  Upon consideration of Plaintiffs' motion for judgment upon the agency record and Labor's response thereto and the administrative record, it is hereby

**ORDERED** that Plaintiffs motion for judgment upon the agency record is granted; and it is further

**ORDERED** that Labor's <u>Negative Determination</u>, <u>Negative Reconsideration Determination</u> and <u>Remand Final Negative Determination</u> are not supported by substantial evidence or in accordance with law; and it is further

**ORDERED** that this matter is remanded to Labor with instructions to: (1) explain why code, which is used to create completed software, is not a software component; (2) examine whether Plaintiffs were engaged in the production of code; (3) investigate whether there was a shift in production of code to India; (4) investigate whether code imported from India is like or directly competitive with the completed software or any component

of software formerly produced by Plaintiffs; and (5) investigate whether there has been or is likely to be an increase in imports of like or directly competitive articles by entities in the United States; and it is further

**ORDERED** that Labor shall have until June 9, 2005 to complete additional investigation required and file the remand results; and it is further

**ORDERED** that the parties shall have until June 29, 2005, to submit comments on the remand results; and it is further

**ORDERED** that rebuttal comments shall be submitted on or before July 19, 2005.


                                    /s/   Nicholas Tsoucalas
                                      NICHOLAS TSOUCALAS
                                        SENIOR JUDGE


Dated:    April 14, 2005
          New York, New York