**Slip Op. 06-17**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: SENIOR JUDGE NICHOLAS TSOUCALAS

_____
                                        :
FORMER EMPLOYEES OF COMPUTER            :
SCIENCES CORPORATION,                   :
                                        :
            Plaintiffs,                 :
                                        :
            v.                          :   Court No. 04-00149
                                        :
UNITED STATES SECRETARY OF LABOR,       :
                                        :
            Defendant.                  :
                                        :
_____:


[Held: Labor's second remand determination is not supported by substantial evidence and is not in accordance with law. Case remanded for a third time.]

                                    Dated: January 27, 2006

     Sidley Austin Brown & Wood LLP, (Neil R. Ellis, Rajib Pal, and Sharon H. Yuan) for Former Employees of Computer Sciences Corporation, plaintiffs.

     Stuart E. Schiffer, Deputy Assistant Attorney General, David M. Cohen, Director, Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Delfa Castillo); of counsel: Peter Nessen, Office of the Solicitor, United States Department of Labor, for United States Department of Labor, defendant.


                    <u>**OPINION AND ORDER**</u>


     **TSOUCALAS, Senior Judge**: In this matter, Former Employees of

Computer Sciences Corporation ("Plaintiffs"), challenge the second

remand determination of the Department of Labor ("Labor") conducted

pursuant to the Court's decision in Former Employees of Computer

Sciences Corp. v. Labor ("CSC I"), 29 CIT ___, 366 F. Supp. 2d 1365

(2005), of which familiarity is presumed. Very briefly, Plaintiffs are former employees of Computer Sciences Corporation ("CSC") who were separated from their employment as information technology professionals. See CSC I, 29 CIT at ___, 366 F. Supp. 2d at 1366. Labor initially denied Plaintiffs' eligibility for certification of Trade Adjustment Assistance ("TAA") under Title II of the Trade Act of 1974, as amended 19 U.S.C. § 2271 (West Supp. 2004) (the "Trade Act"). See Negative Determination Regarding Eligibility To Apply for Worker Adjustment Assistance ("Negative Determination"), TA-W-53,209 (Dep't Labor Oct. 24, 2003) Admin. R. 55-56; Notice of Determinations Regarding Eligibility To Apply for Worker Adjustment Assistance, 68 Fed. Reg. 66,877-78 (Dep't Labor Nov. 28, 2003); Notice of Negative Determination on Reconsideration for Computer Sciences Corporation, Financial Services Group ("FSG"), East Hartford, Connecticut ("Negative Reconsideration Determination"), Admin. R. 78-80 (Dep't Labor Feb. 3, 2004) published at 69 Fed. Reg. 8,488 (Dep't Labor Feb. 24, 2004); Notice of Negative Determination on Reconsideration on Remand for Computer Sciences Corporation, Financial Services Group, East Hartford, Connecticut ("Remand Negative Determination"), Supplemental Admin. R. 13-17 (Dep't Labor July 29, 2004) published at 69 Fed. Reg. 48,526 (Dep't Labor Aug. 10, 2004).[1] In CSC I, the Court held that Labor's

---

[1] The "Admin. R." refers to the administrative record from Labor filed with the Court on May 18, 2004. The "Supplemental

Negative Determination, Negative Reconsideration Determination and Remand Negative Determination were not supported by substantial evidence or in accordance with law. See CSC I, 29 CIT at ___, 366 F. Supp. 2d at 1373. Accordingly, the Court remanded this case ordering Labor to "(1) explain why code, which is used to create completed software, is not a software component; (2) examine whether Plaintiffs were engaged in the production of code; (3) investigate whether there was a shift in production of code to India; (4) investigate whether code imported from India is like or directly competitive with the completed software or any component of software formerly produced by Plaintiffs; and (5) investigate whether there has been or is likely to be an increase in imports of like and directly competitive articles by entities in the United States . . . ." Id., 366 F. Supp. 2d at 1373. On remand, Labor again determined that Plaintiffs were not eligible for TAA certification because Plaintiffs do not produce an article under the Trade Act. See Notice of Negative Determination On Remand for Computer Sciences Corporation, Financial Services Group, East Hartford, Connecticut ("Second Remand Negative Determination"),

---

Admin. R." refers to the administrative record filed with the Court on August 2, 2004, in conjunction with remand results from Labor's voluntary remand.    The "2Supp. Admin. R." refers to the administrative record filed with the Court on August 24, 2005, pursuant to the Court ordered remand in CSC I.    References to "Confidential 2Supp. Admin. R." refer to the confidential version of the August 24, 2005, record.

2Supp. Admin. R. 171, 175 (Dep't Labor Aug. 24, 2005) published at 70 Fed. Reg. 52,129, 52,130 (Dep't Labor Sept. 1, 2005).

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 19 U.S.C. § 2395(c) (2000) and 28 U.S.C. § 1581(d) (2000).

## STANDARD OF REVIEW

In reviewing a challenge to Labor's determination of eligibility for trade adjustment assistance, the Court will uphold Labor's determination if it is supported by substantial evidence on the record and is otherwise in accordance with law. See 19 U.S.C. § 2395(b); Woodrum v. Donovan, 5 CIT 191, 193, 564 F. Supp. 826, 828 (1983), aff'd, Woodrum v. United States, 737 F.2d 1575 (Fed. Cir. 1984)). "Substantial evidence is something more than a 'mere scintilla,' and must be enough reasonably to support a conclusion." Ceramica Regiomontana, S.A. v. United States, 10 CIT 399, 405, 636 F. Supp. 961, 966 (1986), aff'd, 810 F.2d 1137 (Fed. Cir. 1987); see also Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Additionally, when reviewing Labor's conclusions of law, the Court will consider whether they are "in accordance with the statute and not be arbitrary and capricious, and for this purpose the law requires a showing of reasoned analysis." Former Employees of Rohm & Haas Co. v. Chao, 27 CIT ___, ___, 246 F. Supp. 2d 1339, 1346

(2003) (quoting <u>Int'l Union v. Marshall</u>, 584 F.2d 390, 396 n.26 (D.C. Cir. 1978)). Under this standard, the Court will "sustain the agency's interpretation of the statute where it has a rational basis in law, even though the court might have reached a different interpretation." <u>Abbott v. Donovan</u>, 6 CIT 92, 100-01, 570 F. Supp. 41, 49 (1983). The Court, however, will "reject the agency's interpretation or application of a statute when it is inconsistent with the legislative purpose of the statute or frustrates Congress' intent." <u>Id.</u> at 101, 570 F. Supp. at 49. "[I]t is for the courts, to which the task of statutory construction is ultimately entrusted, to determine whether or not administrative interpretations are consistent with the intent of Congress and the words of the Act." <u>Woodrum</u>, 5 CIT at 194, 564 F. Supp. at 829.

Moreover, although "the nature and extent of the investigation are matters resting properly within the sound discretion of [Labor,]" <u>Former Employees of Galey & Lord Indus. v. Chao</u>, 26 CIT ___, ___, 219 F. Supp. 2d 1283, 1286 (2002) (quoting <u>Former Employees of CSX Oil & Gas Corp. v. United States</u>, 13 CIT 645, 651, 720 F. Supp. 1002, 1008 (1989) (citation omitted)), good cause to remand exists if Labor's "chosen methodology is so marred that [Labor's] finding is arbitrary or of such a nature that it could not be based on substantial evidence." <u>Id.</u> The Court's review of Labor's determination denying certification of eligibility for TAA

benefits is confined to the administrative record before it.  See 28 U.S.C. § 2640(c); see also Int'l Union v. Reich, 22 CIT 712, 716, 20 F. Supp. 2d 1288, 1292 (1998).


**DISCUSSION**

**I.   Contention of the Parties**

    **A.   Plaintiffs' Contentions**

Plaintiffs argue that Labor's determination that they are ineligible for TAA benefits is not based on substantial evidence in the record, is arbitrary and capricious, and is not in accordance with law.  See Comments Pls.' Former Employees Computer Sciences Corp. Regarding Redetermination Results Filed Dep't Labor Aug. 24, 2005 ("Pls.' Comments") at 4.  Plaintiffs request that the Court vacate Labor's second remand determination and remand this case with instructions to certify Plaintiffs because substantial evidence on the record indicates that Plaintiffs have fulfilled the eligibility requirements for TAA certification.  See Pls.' Comments at 3-4.  Specifically, Plaintiffs argue that Labor's determination that software code is not an article is arbitrary and capricious, ignoring recent Customs rulings.  See id. at 5.  Rather, Plaintiffs assert that producing software or software code, a component of software, is an article within the meaning of the Trade Act.  See id.  Plaintiffs cite HQ 114459, wherein Customs determined that software modules, (source and/or binary code), are objects of trade

and commerce in their ordinary use but exempt from duty under General Note 3(e) of the Harmonized Tariff Schedule of the United States ("HTSUS"). See Pls.' Comments at 5-6. Since all goods are subject to a duty unless exempted under a specific provision, Plaintiffs argue that HQ 114459 indicates that software code is an article under the HTSUS. See id. Plaintiffs contend that because Labor is obligated to follow Customs' interpretation of the HTSUS, which governs the definition of articles, and software is an article under the HTSUS, it is also an article under the Trade Act. See id. at 6-7. Plaintiffs also contend that Labor errs in requiring an article to be tangible under the Trade Act. See id. at 8. Even if tangibility is a requirement, however, Plaintiffs argue that software is tangible because it can be possessed or realized, unlike a service. See id. Plaintiffs maintain that software code is a component of completed software, although such a conclusion is unnecessary here because software code is itself an article under the Trade Act. See id. at 9-10.

Furthermore, Plaintiffs assert that substantial record evidence shows there has been a shift of production of software code to India. See id. at 11. On remand, Labor's investigation determined that the software code written in India is similar to the software code formerly written by the Plaintiffs in the United States. See id. at 12. Thus, Plaintiffs contend that the shift in

production was of like or directly competitive articles as required by the Trade Act. See Pls.' Comments at 12. Plaintiffs finally argue that there has been or is likely to be an increase in imports of software code. See id. Plaintiffs maintain that regardless of the mode of entry, i.e. whether on a physical medium or electronic transmission, software code brought into the United States from India constitutes an importation for purposes of TAA. See id. at 12-13. Plaintiffs emphasize that the mode of entry of an article, especially software, into the United States is not an issue with Customs, as expressed in HQ 114459, or with the United States International Trade Commission. See id. at 13-14. Labor concluded in its second remand determination that CSC has increased its delivery of software code into the United States and the code imported is similar to code formally written by Plaintiffs. See id. at 17. Thus, Plaintiffs argue this increase in the electronic delivery of software code from abroad constitutes an increase in imports of like or directly competitive articles as required by 19 U.S.C. § 2272(a). See id. at 18. Accordingly, Plaintiffs argue that substantial evidence on the record support their eligibility requirements for TAA certification. See id. at 3-4.

#### B.    Labor's Contentions

Labor responds that the Court should affirm its second remand results because they are supported by substantial evidence and are

otherwise in accordance with law.  See Def.'s Resp. Pls.' Comments Dep't Labor's Remand Results ("Labor's Resp.") at 6.  Labor again determined in its second remand determination that Plaintiffs did not produce an article under the Trade Act.  See Labor's Resp. at 8.  Since certification for TAA benefits pursuant to either 19 U.S.C. § 2272(a)(2)(A) or (B) depends on whether software code is considered an article, Labor argues that Plaintiffs' challenge fails.  See id. at 13.  In its second remand determination, Labor distinguished code from completed computer software on a physical medium maintaining that because software code is not embodied on a physical medium, it is not an article under the Trade Act.  See id. at 10.  Thus, although Labor acknowledged that CSC increased the importation of software code into the United States from India, Labor determined that CSC did not shift production of an article for TAA purposes.  See id.  Moreover, Labor asserts that it is impossible to determine whether the software code written in India is like or directly competitive with the software code formally produced by Plaintiffs because such a comparison assumes the existence of articles to compare.  See id.

Labor argues that because Plaintiffs have alleged a shift in production, they must satisfy the threshold requirement showing an actual shift in production to a foreign country of articles they formerly produced.  See id. at 13.  Since the software code

Plaintiffs wrote is intangible until it is incorporated onto a physical medium at the Hartford facility, the code is not an article for purposes of TAA certification. See Labor's Resp. at 15-16. Labor, indeed, likens code to an idea. See id. at 16. Labor states that this court in Former Employees of Murray Eng'g v. Chao ("Murray Eng'g"), 28 CIT ___, 358 F. Supp. 2d 1269 (2004), recognized that the form in which electronic information is embodied may be a factor in determining whether it is considered an article under the Trade Act. See Labor's Resp. at 16. Furthermore, Murray Eng'g also recognized that the Trade Act indicates that the HTSUS governs the definition of articles, which are items subject to a duty. See id. Labor argues that software code is not dutiable under the HTSUS, and thus is not an article. See id. Labor further argues that Plaintiffs' interpretation of HQ 114459 is misplaced. See id. at 17-18. In HQ 114459, Customs found software code to be "goods or merchandise," which Labor argues are not TAA statutory terms and therefore not relevant to the Court's analysis. See id.

Labor also contends that whether coding is a component of an article is not relevant or dispositive in whether there has been a shift in production. See id. at 22. Labor states that the Trade Act refers to "articles," and thus whether software code is an article is dispositive for TAA eligibility. See id. at 23.

Furthermore, Labor reasons that "until it is contained in computer software, code is not a component of computer software." Labor's Resp. at 23. Rather, software code is like an idea that will eventually lead to the existence of an article. See id. Labor asserts that in order for code to be a component of an article, the code would have to be an article itself, possessing tangibility and be embodied on a physical medium. See id. at 24.

Finally, Labor argues that there has not been nor is there likely to be an increase in imports of articles like or directly competitive with the articles CSC produced. See id. Labor surveyed seven of CSC's major competitors and concluded that none of them increased imports of software code during the review period and were not likely to import software code in the future. See id. at 25. Consequently, Labor asserts that Plaintiffs' contention that electronic transmissions of software code into the United States will increase is not supported by record evidence. See id. at 25-26. Labor concludes that Plaintiffs fail to satisfy 19 U.S.C. § 2272(a)(2) because software code formerly written by Plaintiffs, which was not embodied on a physical medium, is not an article under the Trade Act. See id. at 26.

## II. Analysis

The Trade Act provides TAA benefits to workers who have been separated as a result of increased imports into or shifts of production out of the United States. See 19 U.S.C. § 2272. Such benefits include training, re-employment services and various allowances including income support, and job search and relocation allowances. See 19 U.S.C. §§ 2295-98. Labor is required to certify a group of workers as eligible to apply for TAA benefits if "a significant number or proportion of the workers in such workers' firm, or appropriate subdivision of the firm, have become totally or partially separated [from employment]," and if one of two further sets of conditions are satisfied. 19 U.S.C. § 2272(a). First, such workers may qualify if:

> (i) the sales or production, or both, of such firm or subdivision have decreased absolutely; (ii) imports of articles like or directly competitive with articles produced by such firm or subdivision have increased; and (iii) the increase in imports . . . contributed importantly to such workers' separation or threat of separation and to the decline in the sales or production of such firm or subdivision.

19 U.S.C. § 2272(a)(2)(A). Second, the workers may also qualify if there has been a shift in production to a foreign country by the workers' firm or subdivision of articles like or directly competitive with articles produced by the firm or subdivision, and if any of the following conditions are satisfied: (1) the shift in production was to a country which is a party to a free trade

agreement with the United States; (2) the shift in production was to a country that is a beneficiary under one of three listed trade preference programs; or (3) there has been or is likely to be an increase in imports of articles like or directly competitive with articles produced by the subject firm or subdivision. See 19 U.S.C. § 2272(a)(2)(B). It follows then, that for TAA eligibility, Plaintiffs had to produce an article within the meaning of the Trade Act. See 19 U.S.C. § 2272(a), see also Former Employees of Marathon Ashland Pipeline, LLC v. Chao, 26 CIT 739, 743-44, 215 F. Supp. 2d 1345, 1351 (2002) rev'd other grounds 370 F.3d 1375 (Fed. Cir. 2004) (referring to an earlier version of the Trade Act).

   **A.   Labor's Determination that Software Code Must be on a Physical Medium to be an Article Is Not in Accordance With Law**

      **1.   The Trade Act, Implementing TAA Regulations and the HTSUS Do Not Require Tangibility as a Requirement for an Item to be an Article**

In its second remand results, Labor determined that "[c]ode, not embodied on a physical medium, is not considered an article for TAA purposes. It is not found on the Harmonized Tariff Schedule." See Second Remand Negative Determination, 70 Fed. Reg. at 52,130. Under this "HTSUS test," Labor interpreted General Note 3(I)[2] to

---

      [2]   Since there is no "General Note 3(I)" in the 2004 HTSUS, as cited by Labor in its Second Remand Negative Determination, 70 Fed. Reg. at 52,130, and General Note 3(i) deals with authority for the Department of the Treasury to issue rules and regulations, the

exempt software code not on a physical medium from the HTSUS. <u>See</u> <u>id.</u> Labor, therefore, determined that software code is not an article. <u>See</u> <u>id.</u> Labor, however, does not cite to any statute, regulation, persuasive interpretation or its own previous practice to support its conclusion that an article must be tangible under the Trade Act. <u>See</u> <u>id.</u> at 52,130-31. The Court holds that Labor's determination requiring articles to be tangible is a cursory explanation and not a reasoned interpretation of the Trade Act and the HTSUS.

The Trade Act does not define the term "articles" within the statutory language, and specifically absent is a tangibility requirement. <u>See</u> 19 U.S.C. §§ 2101-2495 (2000). Likewise, the implementing regulations also do not define the term "articles." <u>See</u> 19 C.F.R. § 0.1 <u>et seq.</u> (2004). The language of the Trade Act, however, does clearly indicate that the HTSUS governs the definition of articles because it consistently refers to an "article" as items subject to a duty. <u>See</u> <u>Murray Eng'g</u>, 28 CIT at ___, n.7, 358 F. Supp. 2d at 1272, n.7 (citing 19 U.S.C. §§ 2119 & 2252(d)); <u>see also</u> <u>SKF USA Inc. v. United States</u>, 263 F.3d 1369, 1382-83 (Fed. Cir. 2001) (holding that where Congress has used a term repeatedly, it is considered to have the same meaning in each

Court understands Labor to mean General Note 3(e), which exempts telecommunications transmissions.

reference).  Congress has determined that the HTSUS is "considered to be statutory provisions of law."  19 U.S.C. § 3004.  Labor's regulations indicate that it chose to reference the HTSUS in determining what constitutes an article, as a matter of law.  See 29 C.F.R. § 90.11(c) (2004); Former Employees of Electronic Data Systems Corp. v. Labor ("EDS I"), 28 CIT ___, ___, 350 F. Supp. 2d 1282, 1288 (2004).  Customs, not Labor, is explicitly delegated by Congress to apply and interpret the HTSUS.  See 19 U.S.C. § 1500.  As such, Labor's interpretation of the HTSUS may be afforded respect according to Skidmore v. Swift & Co., 323 U.S. 134 (1944), meaning "proportional to its 'power to persuade.'"  EDS I, 28 CIT at ___, 350 F. Supp. 2d at 1286-87 (citing United States v. Mead Corp., 533 U.S. 218, 221 (2001); Skidmore, 323 U.S. at 140).

All "goods provided for in [the HTSUS] and imported into the customs territory of the United States . . . are subject to duty or exempt therefrom as prescribed in general notes 3 through 18, inclusive." General Note 1, HTSUS (2004).[3]  "Exempt" is defined as "free or released from a duty or liability to which others are held."  Black's Law Dictionary 612 (8th ed. 2004).  General Note 3(e) is titled "exemptions" and states that "telecommunications transmissions" are "not goods subject to the provisions of the

_____

   [3]    The General Notes are included as part of the legal text of the HTSUS.  See The Preface to the 16th Edition of the HTSUS, 1.

tariff schedule." General Note 3(e), HTSUS. Here, Labor implicitly concedes that the software code imported from India is a telecommunications transmission. <u>See</u> <u>Second Remand Negative Determination</u>, 70 Fed. Reg. at 52,130. General Note 3(e) supports the conclusion that telecommunications transmissions, which would include transmissions of software code via the Internet, are exempt from duty while acknowledging that they are goods entering into the customs boundaries of the United States. <u>See</u> General Note 3(e), HTSUS. The mode of importation, via tangible compact discs versus the Internet, is not the material analysis. <u>See</u> <u>Cunard S.S. Co. v. Mellon</u>, 262 U.S. 100, 122 (1923) (stating "[i]mportation . . . consists in bringing an article into a country from the outside. If there be an actual bringing in it is importation regardless of the mode in which it is effected."). The HTSUS, on its face, does not indicate that exemption from paying duties is synonymous with exclusion, <u>i.e.</u> not included, as Labor would like the Court to believe. <u>See</u> <u>Second Remand Negative Determination</u>, 70 Fed. Reg. at 52,130. Hence, software code transmitted electronically is exempted, which evidences that it has to be covered by the HTSUS. Therefore, Labor's interpretation of General Note 3(e) is not in accordance with the plain meaning of the word "exempt" in the HTSUS. The Court finds that Labor's <u>Second Remand Negative Determination</u> failed to reasonably explain how telecommunications transmissions, which is considered an importation of goods under

the HTSUS, are somehow not articles under the Trade Act for TAA
purposes.

### 2.    Other Agencies' Interpretations of Customs Law Do Not Require Software Code to be Tangible

Labor's legal conclusion, that software code must be on a
physical medium to be an article, is also incongruous with
interpretations from both the United States Bureau of Customs and
Border Protection ("Customs") and the United States International
Trade Commission ("ITC").   The Court is persuaded by these
interpretations because of the agencies' extensive experience in
customs law.

Congress has explicitly delegated Customs the authority to
apply and interpret the HTSUS.  See 19 U.S.C. § 1500.  Labor's
tangibility requirement and interpretation of General Note 3(e) of
the HTSUS is discordant with Customs Ruling Letter 114459 ("HQ
114459") 1998 U.S. CUSTOM HQ LEXIS 640 (Sept. 17, 1998).  In HQ
114459, Customs addressed specifically whether "software modules
and products (source code and/or binary code)" imported into the
United States via the Internet was subject to a duty.  HQ 114459,
1998 U.S. CUSTOM HQ LEXIS 640 at *1-2.  Customs concluded that
software modules and products brought into the Unites States via
the Internet is an "importation of merchandise."  Id. at *3.
Notably, Customs applied the Supreme Court's holding in Cunard

S.S., to this modern situation stating "[t]he fact that the importation of the merchandise via the Internet is not effected by a more 'traditional vehicle' (e.g., transported on a vessel) does not influence our determination." Id. Cognizant that Customs is the delegated authority in determining what items are included in the HTSUS, see 19 U.S.C. § 1500, Labor fails to explain why its interpretation of the HTSUS leads to a different conclusion. Labor argues that the terms "goods" and "merchandise" are not TAA statutory terms and therefore not relevant to the Court's analysis. See Labor's Resp. at 18. The Court, however, disagrees. Labor has stated that it interprets the term "articles" to be consistent with the HTSUS, which is the foundation of HQ 114459. See 29 C.F.R. § 90.11(c); see also EDS I, 28 CIT at ___, 350 F. Supp. 2d at 1288. Therefore, Labor's interpretation should not be contrary to Customs' without a reasoned analysis that has the "power to persuade." Skidmore, 323 U.S. at 140.

While Customs interprets the HTSUS, the ITC is responsible for continually reviewing and recommending modifications to the HTSUS as it considers them necessary or appropriate. See 19 U.S.C. §§ 1332 & 3005. Congress has delegated broad authority to the ITC to determine what constitutes and "article" for purposes of Title 19 of the United States Code. See id.; Former Employees of Electronic Data Systems, Corp. v. United States ("EDS II"), 29 CIT ___, ___,

Slip Op. 05-148 at 13 (2005) ("Congress mandated that the ITC develop HTSUS to resolve all questions relative to the classification of articles in the several sections of the Customs law." (citations omitted)).  Labor has acknowledged that the ITC has such broad powers.  See id.  In interpreting another statute, the Supreme Court stated that it begins with "the premise that when Congress uses the same language in two statutes having similar purposes . . . it is appropriate to presume that Congress intended the text to have the same meaning in both statutes."  Smith v. City of Jackson, 544 U.S. 228, ___, Slip Op. 04-35 at 4 (Mar. 30, 2005).

The ITC in interpreting section 337 of the Tariff Act of 1930, 19 U.S.C. § 1337, has treated software as an article of importation regardless of its mode of importation.  See Commission Opinion on Remedy, the Public Interest, and Bonding at 28-29 in In the Matter of Certain Hardware Logic Emulation Systems and Components Thereof, Inv. No. 337-TA-383, Publication No. 3089 (ITC, Mar. 30, 1998);[4] see also EDS II, 29 CIT at ___, Slip Op. 05-148 at 12-14.  In its Second Remand Negative Determination, Labor did not address how its limiting definition under the Trade Act can be reconciled with the ITC's interpretation of an article under 19 U.S.C. § 1337.  While not addressing the ITC's interpretation of an article here, Labor

---

[4]   Publication No. 3089 can be found on the ITC's website at http://edisweb.usitc.gov/edismirror/337-383/Violation/46666/46666/44a/C23E.pdf.

does acknowledge that its determinations of what is an article should concur with the HTSUS.  See 29 C.F.R. § 90.11(c); EDS I, 28 CIT at ___, 350 F. Supp. 2d at 1288.  Given the ITC's role in updating the HTSUS, its interpretation of software code is highly probative to the Court.  The Court remands this issue to Labor to consider the ITC's interpretation and explain its departure therefrom.

In conclusion, Labor fails to recognize or adapt its position to recent technology.  Given that "remedial statutes [such as 19 USCS § 2272] are to be liberally construed," Int'l Union, UAW v. Marshall, 584 F.2d 390, 396 (D.C. Cir. 1978) (interpreting an earlier version of the Trade Act), Labor is stubbornly arguing its position that software code must be embodied on a physical medium, which is supported by a shaky foundation.  The plain language of the Trade Act does not require that an article must be tangible.  Labor's regulations read together with the HTSUS support the conclusion that software code, regardless of the mode of importation, is an article under the Trade Act.  Moreover, Customs and the ITC do not differentiate between physical or electronic importation of software and software code.  Accordingly, the Court holds that Labor's determination that software code must be tangible to be an article under the Trade Act is not in accordance with law as currently articulated by Labor.

**B.    Labor's Determination That Plaintiffs Are Not Eligible
for TAA Certification is Not Supported by Substantial
Evidence on the Record**

Labor agrees that a significant number of CSC's former code
writers were separated from their employment, thus Plaintiffs
satisfy the first requirement of 19 U.S.C. § 2272(a).  See CSC I,
29 CIT at ___, 366 F. Supp. 2d at 1371.  It is the remaining
requirements under 19 U.S.C. § 2272(a)(2)(B) that Labor determined
Plaintiffs did not satisfy.  See generally Second Remand Negative
Determination, 70 Fed. Reg. at 52,129-31.  In CSC I, the Court held
that Labor had "failed to satisfy its obligation to compare the
domestic product with the foreign made product" and thus failed to
"meet the threshold requirement of reasonable inquiry."  CSC I, 29
CIT at ___, 366 F. Supp. 2d at 1372.  Thus, the Court remanded this
case ordering Labor to "(1) explain why code, which is used to
create completed software, is not a software component; (2) examine
whether Plaintiffs were engaged in the production of code; (3)
investigate whether there was a shift in production of code to
India; (4) investigate whether code imported from India is like or
directly competitive with the completed software or any component
of software formerly produced by Plaintiffs; and (5) investigate
whether there has been or is likely to be an increase in imports of
like or directly competitive articles by entities in the United
States."  Id., 366 F. Supp. 2d at 1373.  Labor attempts to avoid
the Court's remand instructions with its simple assertion that

because software code is not an article under the Trade Act, Plaintiffs fail to satisfy 19 U.S.C. § 2272(a)(2). See Second Remand Negative Determination, 70 Fed. Reg. at 52,130. The Court, however, finds that Labor's legal conclusions are not in accordance with law. Mindful of that finding, the Court will examine if Labor's factual determinations are supported by substantial evidence on the record. Thus, the Court will address each of its remand instructions in turn.

First, the Court ordered Labor to explain why it considered software code to not be a component of software. See CSC I, 29 CIT at ___, 366 F. Supp. 2d at 1373. On remand, Labor determined that it does not "consider software code, not embodied on any physical medium, to be a component of completed software." Second Remand Negative Determination, 70 Fed. Reg. at 52,130. Labor further stated that

> To be a component [Labor] requires that the item in question also be an article in and of itself. It is not enough that the item be indispensable to the function of the completed article. The code is like an idea that will eventually lead to the existence of an "article" - it is, in fact, necessary - but it is not something that can be measured or "imported." Therefore, software code, like an idea, is not a component of an "article."

Id. Labor's determination here relies solely on whether the software code is on a physical medium to be a component of an article. Labor fails to cite to any statute, regulation, or even

past practice to support its determination.  See id.  The Court

finds that Labor's determination again fails a reasoned analysis.

See 19 U.S.C. § 2395(b).  The Court noted in CSC I, that "if code

is a process in the development of completed software, then code

must also be considered a component of such software." CSC I, 29

CIT at ___, 366 F. Supp. 2d at 1372.  Whether software code is

tangible is not the crux of this analysis.  Simply, "software

[code] does not exist without a carrier medium.  While it can be

transmitted electronically, it must be ultimately stored on some

carrier medium, such as a CD-Rom, floppy disk, hard drive, or the

machine on which it is installed." EDS II, 29 CIT at ___, Slip Op.

at 15 (emphasis retained).  Under the HTSUS, a component is

something that gives the item in question its essential character.

See General Rules of Interpretation 3(b), HTSUS.  Software code

creates the essential character of software.  As such, software

code must be a component of software and thus an aspect in the

production of software.

The second and third elements of the Court's remand

instructions ordered Labor to examine whether Plaintiffs were

engaged in the production of code and whether there was a shift in

the production of code to India.  See CSC I, 29 CIT at ___, 366 F.

Supp. 2d at 1373.  In its Second Remand Negative Determination,

Labor "concluded that the plaintiffs did write software code, and

that the code writing function was transferred to India." Second Remand Negative Determination, 70 Fed. Reg. at 52,130. The Court holds that Labor complied with the Court's remand instructions regarding these two elements.

The Court also ordered Labor to investigate whether the imported code from India is like or directly competitive with the software code formerly produced by Plaintiffs. See CSC I, 29 CIT at ___, 366 F. Supp. 2d at 1373. Labor determined that it was "impossible to answer whether" software code formerly written by Plaintiffs is like or directly competitive with the imported code from India because "that assumes the existence of articles to compare." Second Remand Negative Determination, 70 Fed. Reg. at 52,130. Labor stopped its analysis because it determined that intangible software code is not an article and "clearly not 'like or directly competitive' with an actual article such as completed software on a physical medium." Id. The Court finds that Labor again has failed to conduct a reasoned analysis. Simply because Labor continues to repeat its tangibility requirement does not make the requirement come true. The Court clearly stated in CSC I, "[w]hile Labor may be correct that the code from India is not like or directly competitive with the completed software on physical media produced in the United States, it does not follow that the code from India is not like or directly competitive with a function

used in producing the completed software in the United States."
CSC I, 29 CIT at ___, 366 F. Supp. 2d at 1372.  The Court inquired
as to whether the code writing function that was shifted to India
is like or directly competitive with the code formally written by
Plaintiffs; not whether software code was comparable to completed
software as Labor determined in its remand results.  See Second
Remand Negative Determination, 70 Fed. Reg. at 52,130.  Labor
acknowledges that the "software code written in India is similar to
the software code plaintiffs wrote in the United States."  Id.
Since Labor has determined that the two are "similar," the Court
finds that the code writing function that was shifted to India is
"like" the code formally written by Plaintiffs satisfying the "like
or directly competitive" requirement of 19 U.S.C. § 2272 (a)(2).

Finally, the Court ordered Labor to determine whether there
has been or is likely to be an increase of imports of like or
directly competitive articles by entities in the United States.
See CSC I, 29 CIT at ___, 366 F. Supp. 2d at 1373.  On remand,
Labor surveyed "seven companies who produce software which might be
considered like or directly competitive" with software produced by
CSC.  See Second Remand Negative Determination, 70 Fed. Reg. at
52,131.[5]  Based on the survey responses, Labor determined that

---

[5]    Of the seven companies surveyed, the record indicates
that Labor received answers of varying substance from six of the
companies.  See Confidential 2Supp. Admin. R. at 105-170.  Of the

"none had imported software in a physical medium, and while some stated that new business opportunities were always possible, none had expressed that they were likely to import any software." Id. Labor also stated that while CSC has obviously "increased its 'delivery' of software code to the United States, but because software code" is not an article, "such an increase did not qualify" Plaintiffs for TAA certification. Id. The Court finds that the record does not support Labor's determination. Two of the companies surveyed clearly answered that they wrote software code overseas, which was then imported into the United States via the Internet. See Confidential 2Supp. Admin. R. at 145-52 & 169-70.[6] Furthermore, one of the two companies unambiguously stated that it considered its software competitive with software formally produced by Plaintiffs. See id. at 169-70. Labor does not acknowledge these two companies' imports in its Second Remand Negative Determination because arguably the software was not imported on a physical medium. The Court, however, finds the fact that other companies are importing software code over the Internet highly relevant. Since Plaintiffs formerly produced software code that is

_____

six, three responded unambiguously as to whether they produced software similar to CSC, of which two answered affirmatively. See id.

[6] For business proprietary reasons, the identities of the two companies and the countries exported from are unnecessary details here.

presently imported over the Internet and other companies are doing so of like and directly competitive software code, the Court finds that Plaintiffs have satisfied 19 U.S.C. § 2272(a)(2)(B)(ii)(III).

**CONCLUSION AND ORDER**

The Court finds that Labor's determination denying Plaintiffs' eligibility for certification to receive TAA benefits on the basis that Plaintiffs did not produce an article under the Trade Act is not supported by substantial record evidence and is not in accordance with law. Labor's interpretation of the law, that software code must be embodied on a physical medium to be an article under the Trade Act, is arbitrary and capricious. Accordingly, the Court again remands this matter to Labor with instructions to adequately explain its legal conclusion as to why software code is not an article under the Trade Act. Labor should specifically address how it can reasonably interpret the Trade Act, the HTSUS, and Customs' and the ITC's determinations to require that an article must be on a physical medium. If Labor cannot justify its tangibility requirement, then Labor should conclude that software code, regardless of its mode of entry, is an article under the Trade Act. Furthermore, the Court holds that substantial evidence on the record supports a determination that Plaintiffs have satisfied the requirements in 19 U.S.C. § 2272(a)(2)(B) for eligibility of TAA certification because there has been a shift in

production to India by CSC of software code like or directly competitive with software code formerly written by Plaintiffs. The record also supports that there has been or is likely to be an increase in imports of software code.

Upon consideration of Labor's <u>Second Remand Negative Determination</u>, Plaintiffs' Comments, Labor's Response and the administrative record, it is hereby

**ORDERED** that Labor's <u>Second Remand Negative Determination</u> is not supported by substantial evidence or in accordance with law; and it is further

**ORDERED** that this matter is remanded to Labor with instructions to:

    (1) explain more fully how its interpretation of the term "article" requiring software code to be embodied on a physical medium under the Trade Act is in accordance with the HTSUS and Customs' and the ITC's interpretations thereof;
    (2) if Labor cannot do so, then Labor should conclude with a reasoned explanation that software code, regardless of its mode of entry, is an article under the Trade Act;
    (3) re-evaluate and explain, regardless of whether embodied on a physical medium, if code is a component of software;
    (4) re-examine the record to determine whether there has been or is likely to be an increase of imports of like or directly competitive software code by entities in the United States; and it is further

**ORDERED** that if Labor concludes that software code is an article and that Plaintiffs satisfy 19 U.S.C. § 2272(a) to certify Plaintiffs for TAA eligibility; and it is further

**ORDERED** that Labor shall have until March 24, 2006, to file the remand results; and it is further

**ORDERED** that Plaintiffs shall have until April 14, 2006, to submit comments on the remand results; and it is further

**ORDERED** that rebuttal comments shall be submitted on or before April 28, 2006.


                                       /s/ Nicholas Tsoucalas
                                      NICHOLAS TSOUCALAS
                                      SENIOR JUDGE

Dated:     January 27, 2006
           New York, New York